[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13607
Non-Argument Calendar
_____

D.C. Docket No. 8:19-cr-00149-VMC-AAS-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE MIGUEL ARBOLEDA VELEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 13, 2020)

Before MARTIN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Jose Miguel Arboleda Velez appeals his 108-month concurrent prison sentences after pleading guilty to conspiracy to distribute and possess with intent to distribute, and aiding and abetting possession with intent to distribute, five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. On appeal, Defendant challenges the district court's denial of a minor-role reduction. Because the district court did not clearly err, we affirm Defendant's sentences.

## I.    BACKGROUND

In March 2019, the Coast Guard intercepted two "Panga" style vessels, the *Sixoy I* and the *Posicon*, in international waters near Manzanillo, Mexico. Each vessel was manned by an Ecuadorian captain and two Colombian crew members. Although the captains claimed Ecuadorian registry and told authorities that they were on a fishing trip, Ecuador could neither confirm nor deny registry and the vessels did not have fishing gear onboard. Accordingly, the boarding team treated the vessels as without nationality and conducted a minimally intrusive search by drilling holes in the main decks. The search revealed 427 kilogram bricks of cocaine on the *Sixoy I* and 384 kilogram bricks of cocaine on the *Posicon*. Defendant, who was on the *Posicon*, gave authorities the name and phone number of the man he said had recruited him to participate in the drug trafficking conspiracy. Describing his role on the vessel, Defendant said that, when directed

2

by the captain, he would carry a gasoline container from the bow to the stern, where the other crew member would insert a hose leading to the motor into the gas container.

A federal grand jury returned a two-count indictment against Defendant and his five codefendants. Count 1 charged the defendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), (b), and 21 U.S.C. § 960(b)(1)(B)(ii). Count 2 charged the defendants with aiding and abetting possession with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 18 U.S.C. § 2, 21 U.S.C. § 960(b)(1)(B)(ii). Defendant pled guilty without a plea agreement.

Based on the amount of cocaine found on the *Posicon*, the presentence investigation report assigned a base offense level of 36 under U.S.S.G. § 2D1.1(c)(2). After applying a two-level safety-valve reduction under U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2, and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, Defendant's total offense level was 31. Defendant had no criminal history, resulting in a criminal history category of I and a guideline range of 108 to 135 months' imprisonment.

3

The district court held a joint sentencing hearing for Defendant and four of his codefendants, who had likewise pled guilty. Several of the defendants, starting with Angel Claudino Ruiz Reyes, a crew member from the *Sixoy I*, sought minor-role reductions under U.S.S.G. § 3B1.2. The Government opposed a minor-role reduction for any of the defendants. It argued that the crew members were not substantially less culpable than the captains because their roles were similarly vital to transporting the drugs. The Government also argued that the defendants could not be compared to individuals in a larger conspiracy because they were only being held accountable for transporting the drugs found on their boats and there was little evidence concerning the structure of a bigger criminal organization.

Addressing Ruiz Reyes first, the court agreed with the Government and denied a minor-role reduction. First, the court found that the crew members and captains were equally culpable because their roles were not meaningfully distinct and each defendant's role was necessary to completing the task of transporting the drugs. Second, the court ruled that it was not fair to compare the defendants' roles to the organizers of the criminal enterprise because the defendants had not been held accountable for drugs involved in a bigger conspiracy.

When it was Defendant's turn to seek a minor-role reduction, defense counsel argued that Defendant had little understanding of the scope and structure of the criminal activity, that he had no decision-making authority or ownership

4

interest in the cocaine, that his pay was tiny compared to the value of the cocaine, and that he was substantially less culpable than the captain of the *Posicon* and two recruiters known to the Government. The court, however, denied Defendant's request for a minor-role reduction for the same reasons it had denied a reduction to Ruiz Reyes.

The court then adopted the presentence investigation report's guideline calculations and imposed low-end, concurrent sentences of 108 months' imprisonment. In explaining why a downward variance was unwarranted, the court noted that Defendant had committed a serious offense and that the Government had already given him a significant break by holding him accountable only for the drugs found on the *Posicon*.

## II.    DISCUSSION

On appeal, Defendant challenges the district court's denial of a two-level minor-role reduction, arguing that the court should have considered the roles of two other participants in the crime, namely, the two recruiters known to the Government. "We review a district court's denial of a role reduction for clear error." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted).

The Sentencing Guidelines direct a district court to decrease a defendant's offense level by two levels "[i]f the defendant was a minor participant in any criminal activity."  U.S.S.G. § 3B1.2(b).  A "minor participant" is defined as one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2 comment. n.5. "In determining whether [a minor-role] adjustment applies, the district court should consider, first, the defendant's role in the relevant conduct for which he has been held accountable at sentencing, and, second, his role as compared to that of other participants in his relevant conduct."  *United States v. Wenxia Man*, 891 F.3d 1253, 1274 (11th Cir. 2018) (quoting *United States v. Wright*, 862 F.3d 1265, 1277–78 (11th Cir. 2017)); *United States v. Rodriguez De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (en banc) (holding that "the district court must measure the defendant's role against . . . the conduct for which she has been held accountable" and "may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant" if "the record evidence is sufficient"). Whether a defendant qualifies for a minor-role reduction depends upon "the totality of the circumstances" and "the facts of the particular case."  U.S.S.G. § 3B1.2 comment. n.3(C).

Here, the district court did not clearly err in finding that Defendant was not a minor participant.  For starters, the court correctly determined that Defendant was

6

being held accountable only for helping transport the 384 bricks of cocaine found on the *Posicon*. Defendant was not scored for the cocaine found on the *Sixoy I* or any drugs involved in a larger conspiracy. Nor was he held accountable as an organizer of the criminal enterprise.

The court also reasonably found that the role Defendant played in transporting the cocaine was both essential and not "meaningfully distinct" from the role played by the other two individuals on the *Posicon*. As the court observed, "[t]he bottom line is, it takes all of these individuals working together . . . . to make [the job] happen." And like Defendant, the captain and other crew member on the *Posicon* were paid to perform specific and limited tasks to get the cocaine from point A to point B. *Cf. De Varon*, 175 F.3d at 942–43 ("[W]hen a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs.").

Defendant's only argument on appeal is that the court should have also compared Defendant's conduct to the two recruiters known to the Government. He contends that each of the recruiters also qualified as a "participant," which the Guidelines define as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 comment. n.1; U.S.S.G. § 3B1.2 comment. n.1.

Even assuming that the two recruiters were "participants," however, the district court did not clearly err in declining to compare Defendant's role to that of the recruiters. First, although Defendant had "the burden of establishing his minor role in the offense by a preponderance of the evidence," *Cruickshank*, 837 F.3d at 1192, he did not introduce a sufficient evidentiary basis for comparing the recruiters' roles to the role Defendant played. The record showed no more than that the recruiters existed and that they hired Defendant for the job. *See De Varon*, 175 F.3d at 946 (holding that a "bare record" establishing "no more than that [the defendant] was hired by someone (Nancy) to smuggle one-half kilogram of heroin into the United States, and to deliver the drugs to someone else" did not "compel the conclusion that Nancy was sufficiently more culpable than [the defendant]"). There was no evidence that the recruiters played a larger role in organizing the criminal enterprise, leaving open the possibility that they were likewise hired to perform the specific and limited task of hiring Defendant. Thus, the evidence did not establish that Defendant was less culpable than the recruiters. *See id.* at 944 ("[A] defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants.").

Second, even assuming that the recruiters played a central role in a larger conspiracy, the district court's decision to disregard them was reasonable because Defendant was not held accountable for participating in a larger conspiracy. "Only

8

if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." *Id.* Here, Defendant was held accountable only for his conduct in transporting drugs on the *Posicon*. "The conduct of participants in any larger criminal conspiracy [was] irrelevant." *Id.* Thus, the district court's decision not to compare Defendant's role in the criminal enterprise to the conduct of the recruiters was not clear error.

## III. CONCLUSION

Because substantial evidence supported the district court's finding that Defendant was not less culpable than most other participants in the criminal activity, the court did not clearly err in finding that Defendant was not a "minor participant." We therefore affirm the district court's denial of a two-level minor-role reduction and affirm Defendant's sentences.

**AFFIRMED.**

9